1
2
3
4
5
6
7
8
9
10
11

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JIMMY L. E.,

                Plaintiff,

    v.

COMMISSIONER OF SOCIAL
SECURITY,

                Defendant.

Case No. 3:20-cv-5444-TLF

ORDER REVERSING AND
REMANDING DEFENDANT'S
DECISION TO DENY BENEFITS

12

       Plaintiff has brought this matter for judicial review of defendant's denial of his

13 application for disability insurance benefits.

14

       The parties have consented to have this matter heard by the undersigned

15 Magistrate Judge. 28 U.S.C. § 636(c); Federal Rule of Civil Procedure 73; Local Rule

16 MJR 13.

17

                  I.    <u>ISSUES FOR REVIEW</u>

18 A.  Whether the ALJ Properly Evaluated Plaintiff's Subjective Symptom Testimony

19 B.  Whether the ALJ Properly Evaluated Medical Opinion Evidence

20

                II. <u>BACKGROUND</u>

21

       On August 9, 2017, Plaintiff filed an application for DIB, alleging therein a

22 disability onset date of May 1, 2017. Administrative Record ("AR") 348. Plaintiff's

23 application was denied upon official review and upon reconsideration. AR 163, 174. A

24 hearing was held before Administrative Law Judge ("ALJ") Rebecca Jones on August

25

17, 2018. AR 44–102. On January 25, 2019, ALJ Jones issued a decision finding that Plaintiff was not disabled. AR 190–202. On April 17, 2019, the Social Security Appeals Council issued an order remanding the case for further consideration of Plaintiff's limitations and to obtain medical expert testimony. AR 210–11

A new hearing was held before the same ALJ on August 8, 2019. AR 103–62. On October 30, 2019, the ALJ issued a decision again finding that Plaintiff was not disabled. AR 17–43. On March 11, 2020, the Social Security Appeals Council denied Plaintiff's request for review. AR 1–6.

III.    STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of Social Security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

IV.    DISCUSSION

In this case, the ALJ found that Plaintiff had the severe, medically determinable impairments of degenerative disc disease of the lumbar spine, obstructive sleep apnea, migraine tension headaches, right shoulder ACL joint arthritis status-post arthroscopic surgery, left shoulder strain with labral tear and ACL osteoarthritis, bilateral pes planus with plantar fasciitis, sinusitis, cervical strain, and bilateral carpal tunnel syndrome. AR 24. Based on the limitations stemming from these impairments, the ALJ found that Plaintiff could perform a reduced range of sedentary work. AR 24. Relying on vocational

1   expert testimony, the ALJ found at step four that Plaintiff could not perform any past

2   relevant work, but could perform other jobs existing in significant numbers in the

3   national economy, thus concluding at step five that Plaintiff was not disabled. AR 33.

4       A.   Whether the ALJ Properly Evaluated Plaintiff's Subjective Symptom Testimony

5           Plaintiff assigns error to the ALJ's evaluation of his subjective symptom

6   testimony. Dkt. 24, p. 9.

7           To reject a claimant's subjective complaints, the ALJ's decision must provide

8   "specific, cogent reasons for the disbelief." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir.

9   1996) (citation omitted).  The ALJ "must identify what testimony is not credible and what

10  evidence undermines the claimant's complaints." *Id.*; *Dodrill v. Shalala*, 12 F.3d 915,

11  918 (9th Cir. 1993).  Unless affirmative evidence shows the claimant is malingering, the

12  ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing."

13  *Lester*, 81 F.2d at 834. "[B]ecause subjective descriptions may indicate more severe

14  limitations or restrictions than can be shown by medical evidence alone," the ALJ may

15  not discredit a subjective description "solely because it is not substantiated affirmatively

16  by objective medical evidence." *Robbins v. Social Sec. Admin.*, 466 F.3d 880, 883 (9th

17  Cir. 2006).

18          At the first hearing, Plaintiff testified that, after retiring from the Army, he had

19  planned to be a commercial driver but lost his commercial driver's license due to the

20  difficulty he had manipulating a truck's controls and his need for pain medication. AR

21  55. He stated that he could not lift overhead or bend over, had shoulder pain, and

22  dropped things frequently due to numbness in his hands. AR 62–63. He stated that he

23  had day-long, intense headaches once a week, and the only treatment was ibuprofen.

24

25

AR 68. He stated that he had been recommended for ulnar nerve surgery to address his

carpal tunnel syndrome, but this had not taken place. AR 68–69. He stated that he wore

high arch shoes due to plantar fasciitis, could walk for 150 feet at a time before needing

five to ten minutes of rest, could lift nothing heavier than a gallon of milk, and could sit

for 20-30 minutes before needing to shift positions. AR 63, 69–70, 73, 75–76.

Plaintiff stated that he could use a smartphone, provided he could manipulate the

screen with a stylus; drove to Redding, California, by splitting the driving with his wife;

drove in a car for a total of six hours per week; and used marijuana to soothe his pain

symptoms twice a week. AR 56–58.

At his second hearing, Plaintiff testified that his symptoms had worsened, and

that despite his dieting efforts he had gained 30 pounds, which exacerbated his

symptoms. AR 129–30. He stated that he dropped items frequently, that he had to sell

his family's goats because he could not care for them, he could type "regular" for only

five minutes at a time, and he could stand with a cane for only ten minutes at a time. AR

143. He stated that he required the help of his wife and children to accomplish everyday

tasks. AR 138.

The ALJ found Plaintiff not fully credible, reasoning that his statements regarding

his limitations were inconsistent with (1) his activities of daily living; (2) medical

evidence; (3) his improvement with generally conservative treatment; (4) his failure to

seek further recommended treatments; (5) evidence of symptom magnification; and (6)

his cessation of work for non-disability-related reasons. AR 30–31.

As to the first reason, Plaintiff's activities of daily living do not contradict his

testimony regarding his limitations.

A claimant's participation in everyday activities indicating capacities that are transferable to a work setting may constitute a specific and legitimate reason for discounting a medical opinion. *See Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir.1999).

Yet disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations. *See Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998), citing *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir.1987) (a disability claimant need not "vegetate in a dark room" in order to be deemed eligible for benefits).

Here, the ALJ identified Plaintiff's ability to prepare meals, do laundry, load and unload a dishwasher, handle his own personal care, and drive for a total of six hours per week, in addition to occasionally driving to California. AR 25, 27. The ALJ did not, however, address Plaintiff's testimony that he usually required the help of his wife or his children to accomplish most of these tasks, with the exception of the weekly driving—on trips to California, he alternated driving with his wife. AR 58. On appeal, the Commissioner argues that driving for six hours per week is inconsistent with Plaintiff's testimony that he could not sit for more than half an hour at a time without changing positions; however, Plaintiff did not state that his driving required him to be seated for longer than this. *See* Dkt. 30, p. 4.

With respect to the ALJ's second reason, an inconsistency with the objective evidence may serve as a clear and convincing reason for discounting a claimant's testimony. *Regennitter v. Comm'r of Social Sec. Admin.*, 166 F.3d 1294, 1297 (9th Cir. 1998). But an ALJ's decision may not reject a claimant's subjective symptom testimony "solely because the degree of pain alleged is not supported by objective medical

evidence." *Orteza v. Shalala*, 50 F.3d 748, 749-50 (9th Cir. 1995); *Byrnes v. Shalala*, 60 F.3d 639, 641-42 (9th Cir. 1995) (applying rule to subjective complaints other than pain).

In this situation, the ALJ relied on MRIs and radiographs (dated before the relevant period) that showed only mild degenerative disc disease, treatment notes of normal gait and independent ambulation, only mild degenerative changes in his shoulder after a 2016 surgery, and his grip strength being hindered only by poor effort. AR 26–27. This collection of raw data from before the relevant period is not substantial evidence, on its own, for the ALJ to find a discrepancy between Plaintiff's medical records as compared with Plaintiff's subjective symptom statements. There are many medical records before and during the relevant period that show increasing pain and multiple concerns and medical interventions for issues with Plaintiff's migraine headaches, back, neck, wrists, arms, hands, and shoulders. E.g., AR 1041-1042 (Dr. Scott, Neurology assessment and carpal tunnel pain evaluation, March and April 2016); 1050-1052 (Orthotist Nestor Dulce issues wrist braces and elbow pads after MRI showing arthritis, rotator cuff tear, ACJ degeneration, March 2016); 1059-1063 (Dr. Larsen's assessment of carpal tunnel syndrome, and right Martin-Gruber anastomomosis, March 2016); 1077 (Dr. Scott's assessment of headaches and head trauma, February 2016); AR 1081-1096 (Dr. Arringon, Dr. Cranston, Dr. Olsen and CPT Bean, MRI showing labral tear and rotator cuff tears, assessment of shoulder pain, bilateral arm pain, and assessment of cervical neck pain, February 2016); AR 1810-1813 (Dr. Leinenbach's assessment and diagnoses, stating that among other limitations, reaching is limited -- September 2017); 2054-2056 (Dr. Yang, injections to

address back and hip pain, December 2018); 2061-2064 (analysis of pain management options by Dr. Yang, September 2018); 2066 (Dr. Tian, injection therapy for pain in lumbar area, June 2019); 2077-2079 (Dr. Borgkvist, shoulder arthroscopy, February 2019); 2081-2082 (Dr. Halpin, assessment of back pain, August 2018).

With respect to the ALJ's third reason, the effectiveness of treatment is a relevant factor in determining the severity of a claimant's symptoms. 20 C.F.R. § 416.929(c)(3); *see Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006); *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (a favorable response to treatment can undermine a claimant's complaints of debilitating pain or other severe limitations). "However, the fact that a patient's symptoms may fluctuate to some degree does not compel the conclusion that the record is 'contradictory' as to his disability or that he can consistently function better than the negative reports reflect." *Sorensen v. Barnhart*, 69 Fed. Appx. 864, 866 (9th Cir. 2003).

The ALJ relied on Plaintiff's testimony that his pain management medications and CPAP equipment mitigated his symptoms, examinations shortly after surgeries showed improvement, and Plaintiff did not obtain surgery between 2017 and 2019. AR 30. However, at the time of the second hearing, Plaintiff testified that his symptoms had worsened and caused significant weight gain that, in turn, further hindered his mobility. AR 129–30.

Plaintiff also testified that he was prescribed Tramadol, an opioid pain medication, for his symptoms, and that he used cannabidiol, or CBD, a marijuana product, when Tramadol alone was not enough. AR 56–57. In general, the Ninth Circuit has viewed the use of narcotic pain medication as non-conservative treatment,

particularly when in conjunction with other treatments that were also not conservative. *See, e.g. Lapeirre–Gutt v. Astrue*, 382 F. App'x 662, 664 (9th Cir. 2010) (holding treatment consisting of "copious" amounts of narcotic pain medication, occipital nerve blocks, and trigger point injections was not conservative). Here, Plaintiff's use of prescribed narcotics along with marijuana, in addition to surgical interventions, cannot fairly be described as "conservative" treatment.

With respect to the ALJ's fourth reason, Ninth Circuit case law is clear that if a claimant complains about disabling pain but fails to seek treatment -- or fails to follow prescribed treatment for the pain -- an ALJ may use such failure as a basis for finding the complaint unjustified or exaggerated. *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007) (citing *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989). An ALJ, however, may not draw inferences about an individual's symptoms from a failure to pursue medical treatment without first considering any explanations that a claimant may provide. SSR 16-3p, 2017 WL 5180304, at *9. Here, the ALJ pointed specifically to Plaintiff's failure to follow up on a referral for carpal tunnel releases, but did not address Plaintiff's testimony that the delay was due to issues related to Veterans Administration bureaucracy and substantial changes in that agency's health care system, which caused him to lose contact with his treating doctor. AR 114–27. Without accounting for Plaintiff's explanation, the ALJ's reliance on Plaintiff's purported failure to seek treatment was erroneous.

With respect to the ALJ's fifth reason, a claimant's tendency to exaggerate symptoms is a permissible reason to find that claimant's testimony incredible. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001). Here, the ALJ stated that

Plaintiff's presentation at a 2018 consultative examination was markedly different than his presentation at an examination five months earlier: his gait, sensation, strength, ability to heel-toe walk, squat, and manipulate objects was diminished. AR 27–28 (citing AR 1815–21). The ALJ did not cite any findings from medical sources indicating that Plaintiff magnified his symptoms. In addition, the sole medical examination supporting the purported symptom magnification was one on which the ALJ chose not to rely. AR 31. Without more, the ALJ's interpretation of these results to indicate symptom magnification was not a finding supported by substantial evidence.

With respect to the ALJ's sixth reason, an ALJ may point to evidence that the claimant stopped working for reasons unrelated to his alleged impairments to undermine his symptom allegations. *Tommasetti*, 533 F.3d at 1040.

The ALJ relied on outside knowledge to the exclusion of Plaintiff's explanation of the circumstances under which he retired from the Army. The ALJ focused on an isolated statement about being "forced" to leave that Plaintiff subsequently clarified was imprecise, and in her decision alleges without any citation that Plaintiff's discussion of his retirement from the Army was false. Dkt. # 19-2, p. 30. The ALJ highlighted the fact that there was no report from a medical evaluation board ("MEB") or physical evaluation board ("PEB"). AR 29. However, there is no explanation as to how this lack of an MEB/PEB was discordant with Plaintiff's testimony that his impairments resulted in his assignment to desk jobs and convinced to leave the military by his impairments. Plaintiff does not assert that he was medically discharged. He retired. At the hearing, the ALJ disagreed with Plaintiff's explanation by stating that she had seen people who were higher ranking who had to have an MEB/PEB, but Plaintiff was discussing his

permanent P3 status (which happened to coincide with his being a non-commissioned

officer). When Plaintiff asked for clarification as to the "higher ranking" individuals to

whom the ALJ was referring, the ALJ provided no answer, stating that "this part of the

conversation is done." AR 132–33. The ALJ made no reference to Plaintiff's P3 status in

her decision. The ALJ's mischaracterization of the record to arrive at a conclusion that

Plaintiff lied about the circumstances of his discharge was not supported by substantial

evidence.

    B. Whether the ALJ Properly Evaluated Medical Opinion Evidence

    Plaintiff assigns error to the ALJ's evaluation of medical opinions from examining

physician Dr. Leinenbach. Dkt. 24, p. 5. Plaintiff also assigns error to the ALJ's partial

reliance on the opinions of non-examining medical consultants; however, an ALJ is not

required to give reasons for crediting, as opposed to rejecting, medical opinion evidence.

*Howard v. Barnhart*, 341 F.3d 1393, 1395 (9th Cir. 1984).

    Under current Ninth Circuit precedent, an ALJ must provide "clear and

convincing" reasons to reject the uncontradicted opinions of an examining doctor, and

"specific and legitimate" reasons to reject the contradicted opinions of an examining

doctor. *See Lester*, 81 F.3d at 830–31.

    The Social Security Administration changed the regulations applicable to

evaluation of medical opinions; hierarchy among medical opinions has been eliminated,

but ALJs are required to explain their reasoning and specifically address how they

considered the supportability and consistency of each opinion. *See* 20 C.F.R. §

416.920c; Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed.

Reg. 5844-01 (Jan. 18, 2017). Under 20 C.F.R. § 416.920c(a), (b)(1)-(2), the ALJ is

required to explain whether the medical opinion or finding is persuasive, based on

1   whether it is supported and whether it is consistent. *Brent S. v. Commissioner, Social*

2   *Security Administration*, No. 6:20-CV-00206-BR, 2021 WL 147256 at *5 - *6 (D. Oregon

3   January 16, 2021). These are the two most important factors in the ALJ's evaluation of

4   medical opinions or findings; therefore, "[t]he 'more relevant the objective medical

5   evidence and supporting explanations presented' and the 'more consistent' with

6   evidence from other sources, the more persuasive a medical opinion or prior finding."

7   *Linda F. v. Saul*, No. C20-5076-MAT, 2020 WL 6544628, at *2 (quoting 20 C.F.R. §

8   404.1520c(c)(1)-(2)).

9       Before, and after, the change to the regulations, an ALJ's reasoning must be

10   supported by substantial evidence and free from legal error. *Ford v. Saul*, 950 F.3d

11   1141, 1153-56 (9th Cir. 2020) (citing *Tommasetti*, 533 F.3d at 1038); *see also Murray v.*

12   *Heckler*, 722 F.2d 499, 501–02 (9th Cir. 1983).

13       1.  Dr. Leinenbach

14       Derek Leinenbach, M.D., examined Plaintiff on September 28, 2017, and

15   diagnosed him with: lumbago, favor mild spondylosis; bilateral sacroiliac joint pain;

16   traumatic brain injury with residual subjective decrease in focus and concentration;

17   chronic headaches; bilateral hand paresthesia, favor bilateral carpal tunnel syndrome

18   with possible right ulnar neuropathy; and bilateral rotator cuff syndrome, right worse

19   than left. AR 1810-1813. Based on these impairments, he opined that Plaintiff would be

20   limited to carrying 50 pounds occasionally and 10 pounds frequently; could stoop on an

21   occasional basis only; could reach occasionally on his right side and frequently on his

22   left; and could feel only frequently. AR 1813. He opined that Plaintiff did not have any

23   other limitations. *Id.*

24

25

1    The ALJ found Dr. Leinenbach's opinion partially persuasive, reasoning that

2    "later studies show that [Plaintiff] is more limited in other areas than found by Dr.

3    Leinenbach," and his manipulative limitations should apply bilaterally. AR 31.

4    Plaintiff assigns error to the ALJ's evaluation of Dr. Leinenbach's opinion

5    because the ALJ, without explanation, found that Plaintiff was limited only in his ability

6    to reach overhead, and not to reach generally. Dkt. 24, p. 6. In response, the

7    Commissioner asserts that the ALJ adopted an RFC consistent with Dr. Leinenbach's

8    findings of only mild deficits in the range of motion in the shoulders, along with medical

9    evidence indicating the same throughout the record. Dkt. 25, p. 15. However, the ALJ

10   did not state any reason as to why Plaintiff was limited only in overhead reaching and

11   not reaching more generally, and the reasons for such a finding asserted by the

12   Commissioner were not relied on by the ALJ.

13   In addition, the ALJ did not address the difference between the opinion of Dr.

14   Leinenbach that Plaintiff's reaching ability was limited and the opinions of the non-

15   examining medical consultants that Plaintiff was only limited in overhead reaching.

16   Without such a finding, there is no way for this Court to review whether the ALJ's

17   assessment was reasonable. "Long-standing principles of administrative law require us

18   to review the ALJ's decision based on the reasoning and factual findings offered by the

19   ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have

20   been thinking." *Bray v. Commissioner of Social Security Admin.*, 554 F.3d 1219, 1225

21   (9th Cir. 2009) (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196, 67 S. Ct. 1575, 91 L.

22   Ed. 1995 (1947)).

23

24

25

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS - 12

Accordingly, the ALJ erred in rejecting a limitation on general reaching without providing an explanation as to why.

<u>CONCLUSION</u>

Based on the foregoing discussion, the Court finds the ALJ harmfully erred in the decision determining plaintiff to be not disabled. Defendant's decision to deny benefits therefore is REVERSED and this matter is REMANDED for further administrative proceedings. The ALJ is directed to conduct a de novo hearing, offer Plaintiff an opportunity to supplement the record with additional medical evidence, re-evaluate Plaintiff's testimony and consider any new testimony Plaintiff may offer, in addition to reconsidering and explaining the limitations supported by the medical opinions.

Dated this 10th day of September, 2021.

Theresa L. Fricke
United States Magistrate Judge